THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Carroll Rogers and Windy Hill Water Park, Inc., Appellants,
 
 
 

v.

 
 
 
 Jill R. Griffith and Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers, P.A., Respondents.
 
 
 

Appeal From Horry County
 J. Michael Baxley, Circuit Court Judge

Unpublished Opinion No. 2004-UP-555
\Submitted September 15, 2004  Filed November 4, 2004

AFFIRMED

 
 
 
 Bradley A. Coxe, of Wrightsville Beach, for Appellant.
 Andrew E. Haselden and R. Davis Howser, both of Columbia, for Respondent.
 
 
 

HEARN, C.J.: In this action for professional malpractice, Appellants Windy Hill Water Park and the companys part owner, Carroll Rogers, (collectively, Windy Hill) challenge the trial courts denial of a motion for a new trial.  We affirm.[1]
FACTS
In December of 1996, Windy Hill contacted the Bellamy Law Firm to assist in the preparation of a lease agreement to cover leasing the companys aquatic amusement park in North Myrtle Beach, South Carolina.  Respondent Jill Griffith, an attorney with the Bellamy Law Firm, prepared the requested lease documents.  After the original lessee withdrew from negotiations, Windy Hill solicited Richard C. Huggins, William Vaught, Jr., and William Vaught, III as new prospective lessees (collectively, the Lessees).  At no point did Griffith assist in Windy Hills negotiations with the Lessees.  Instead, Griffiths services were limited to drafting the agreement revisions requested by Windy Hill.  
On January 27, 1997, Windy Hill asked Griffith to add a paragraph to the lease agreement requiring the Lessees to grant Windy Hill a third mortgage on the residence of William Vaught, Jr. and a second mortgage on property adjoining the residence.  Griffith added the requested language to the lease agreement.  Based on representations made by Lessees, it was Windy Hills understanding that the $350,000.00 mortgage described by the new paragraph would be subordinate in priority to only $62,000.00 in other mortgages.  

The following day, Windy Hill met the Lessees and Griffith at the Bellamy Law Firm for the scheduled execution of the lease.  When it became clear that the mortgages required by the lease agreements new paragraph had not been prepared, Griffith agreed to prepare the mortgages.  According to Griffith, she warned Windy Hill that no title search had been performed and that one could not be performed immediately.  Windy Hill chose to go forward without the title search.  The lease and mortgage documents were then executed, and Griffith stamped DOCUMENTS PREPARED WITHOUT BENEFIT OF TITLE SEARCH on the face of the mortgage.  
The Lessees began operating a water park on Memorial Day, 1997, but made only three payments to Windy Hill before defaulting on the lease agreement.  With the Lessees in default, Windy Hill terminated the lease and took possession and control of the Lessees water park.  When Windy Hill began collection and foreclosure proceedings against the Lessees, a title search revealed the Vaughts property was actually encumbered by $131,550.50 in mortgages with priority over Windy Hill rather than $62,000.00 as had been previously understood.  
Windy Hill brought this action alleging professional negligence on the part of Griffith and the Bellamy Law Firm in the preparation of the mortgage without a title search.  Griffith and the Bellamy Law Firm answered and asserted a general denial to the material allegations contained in the complaint.  Prior to trial, the trial court bifurcated the issues of damages and liability.  After three days of testimony, jury deliberations began on a Friday, at approximately 4:00 p.m. and continued until approximately 8:15 p.m.  The jury resumed deliberations the following Monday at 10:00 a.m. before delivering a verdict in favor of Griffith at approximately 11:45 a.m.  
In a hearing held after the trial, Windy Hill moved for a new trial on two independent grounds.  First, Windy Hill urged the court to invoke the thirteenth juror doctrine because the jurys verdict was against the greater weight of the evidence.  Second, Windy Hill argued the trial had been tainted by juror misconduct.  In support of this argument, Windy Hill offered the affidavit of Catherine Anthony, a juror from the trial, stating she noticed some of the jurors discussing the case Friday evening after ending deliberations for the weekend.  The trial court denied Windy Hills motion.  This appeal followed.
LAW/ANALYSIS
Thirteenth Juror Doctrine
Windy Hill contends the trial court erred by denying its post-trial motion for a new trial based on the thirteenth juror doctrine.  We disagree.
South Carolinas thirteenth juror doctrine grants a trial court judge significant discretionary authority to grant a new trial when the judge concludes the evidence does not justify the verdict.  Norton v. Norfolk S. Ry. Co., 350 S.C. 473, 478, 567 S.E.2d 851, 854 (2002).  As a matter addressed to the trial judges discretion, we will uphold a judges order granting or denying a new trial unless the order is wholly unsupported by the evidence, or [the] conclusion reached was controlled by [an] error of law.  Folkens v. Hunt, 300 S.C. 251, 254-55, 387 S.E.2d 265, 267 (1990).  Here, because substantial testimony and numerous exhibits corroborated Griffiths defensethat she had been retained only for purposes of drafting a lease agreement and had warned Windy Hill about the lack of a title searchwe cannot conclude the trial courts decision not to disturb the jury verdict is wholly unsupported by the evidence.    Accordingly, we find no error in the trial courts refusal to grant a new trial based on the thirteenth juror doctrine.
Juror Misconduct
Windy Hill next contends the trial court erred in not granting a new trial based on juror misconduct.  We disagree.

Rule 606(b), SCRE, provides as follows: 

 Inquiry Into Validity of Verdict or Indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jurys deliberations or to the effect of anything upon that or any other jurors mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the jurors mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jurys attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a jurors affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Rather than basing its new trial motion on any extraneous prejudicial information improperly brought to the jurys attention, Windy Hills motion is based solely upon allegations of internal misconduct.  
Although the South Carolina Supreme Court has indicated juror testimony may be admissible about internal conduct to ensure fundamental fairness, State v. Aldret, 333 S.C. 307, 311, 509 S.E.2d 811, 812 (1999), we find the exception inapplicable to the present case.  At the outset, we note that Aldrets limited exception to the rule prohibiting testimony about internal conduct has never been applied outside criminal cases.  See State v. Franklin, 341 S.C. 555, 534 S.E.2d 716 (Ct. App. 2000); State v. Hunter, 320 S.C. 85, 463 S.E.2d 314 (1995).   Moreover, nothing in the present case suggests the fundamental fairness of the trial process was placed in jeopardy.  According to Windy Hill, the alleged misconduct warranting a new trial was the statement by one juror that she observed jurors continuing to discuss the case Friday night after the deliberations had ceased in small groups.  This is not a case of premature deliberations; rather, the judge had already charged the jury with the law.  While a jury should refrain from discussing a case outside the confines of the jury room, the mere existence of such a discussion does not imply impropriety warranting judicial inquiry.  Therefore, the trial court committed no error in declining to grant a new trial.
AFFIRMED.  
HUFF and CURETON, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.